IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUSAN CRAIG,

        Plaintiff,

v.                                                                     Civil Action No. 3:10-CV-323-BK

DALLAS AREA RAPID TRANSIT
AUTHORITY, et al.,

        Defendants.

## MEMORANDUM OPINION

This cause is before the Court on Defendants' *Motion for Summary Judgment* (Doc. 17) and Plaintiff's *Motion to Strike Defendants' Summary Judgment Evidence* (Doc. 26). For the reasons set forth herein, the Court will **GRANT** Defendants' *Motion for Summary Judgment* and **DENY AS MOOT** Plaintiff's *Motion to Strike Defendants' Summary Judgment Evidence*.

## I. PROCEDURAL HISTORY

Plaintiff, Susan Craig, initiated this 42 U.S.C. § 1983 action against Dallas Area Rapid Transit ("DART"), as well as certain of its employees, namely DART police investigator George Ruiz, DART police officer Arthur Wilder, DART police officer Kim Oswald, and DART Chief of Police James Spiller. (Doc. 1 at 1-2). Plaintiff claimed that, in July 2007, when she was working as a DART police officer, she was assigned to a DART train to check passengers' fare cards. (*Id.* at 3). She approached a couple, asking to see their fare cards, and a physical altercation ensued between Plaintiff and the female passenger during which Plaintiff claimed the passenger kicked her in the face. (*Id.* at 3-4). Other officers arrived to help Plaintiff arrest the passenger. (*Id.* at 4) Afterwards Defendant Wilder noted that he had seen Plaintiff striking

herself in the face to exacerbate her injuries. (*Id.* at 4).

After reviewing Defendant Wilder's report of the incident, Defendant Ruiz investigated the matter and recommended to Defendant Spiller that Plaintiff be terminated, which she was in November 2007. (*Id.*). Defendant Spiller then referred the matter for criminal prosecution on evidence-tampering charges, but Plaintiff ultimately was acquitted. (*Id.* at 4-5). Plaintiff then filed the instant action, raising a state law claim for malicious prosecution as well as claims for the violation of her Fourth Amendment right to be free from unreasonable seizure and Fourteenth Amendment due process right. (*Id.* at 5-7).

Defendants now move for summary judgment, raising a number of arguments. (Doc. 17). Initially, Defendants argue that after her criminal prosecution, Plaintiff successfully sought expunction of her criminal record, which negates the occurrence of her arrest, resulted in the destruction of her criminal case file, and has harmed Defendants' efforts to defend themselves. (*Id.* at 5-9).

Next, Defendants contend that probable cause existed for filing two separate evidence-tampering charges against Plaintiff. First, Defendants submit an affidavit from Officer Wilder in which he attests to seeing Plaintiff strike herself in the face after she had completed paperwork to charge a train passenger with assaulting her. (Doc. 18-3 at 1-2). Second, Defendants submit the deposition of Defendant Ruiz who testified that, while he was investigating the assault incident, he was informed that DART's media relations officer had received a faxed letter, purporting to be from three eyewitnesses, containing false details about the incident. (Doc. 18-1 at 4-5, 8-11). Defendant Ruiz learned that the fax was sent from an Office Depot, and he interviewed an Office Depot employee who submitted a statement indicating that Plaintiff had requested that the letter

2

be faxed to DART. (*Id.* at 11-12). Based on that evidence, Defendant Ruiz had probable cause to submit evidence tampering charges against Plaintiff to the district attorney and did so.[1] (*Id.* at 15-16).

Defendants next argue that the facts supporting Plaintiff's arrest were placed before the Dallas County District Attorneys' Office which presented the case to the grand jury that indicted Plaintiff, and the independent magistrate who signed Plaintiff's arrest warrant. Thus, Defendants contend, those independent intermediaries' actions broke the chain of causation on Plaintiff's Fourth Amendment unreasonable seizure claim, and there is no evidence that those intermediaries' actions were tainted by any of the Defendants' actions. (Doc. 17 at 11-13). Additionally, Defendant police officers argue that they are entitled to qualified immunity as to Plaintiff's Fourth Amendment claim and official immunity under state law as to Plaintiff's malicious prosecution claim. (*Id.* at 13-24). Finally, DART argues that it cannot be liable because Plaintiff did not allege that it had a policy, practice or custom that caused the deprivation of her rights. (*Id.* at 24).

Plaintiff responds to Defendants' summary judgment motion, arguing first that in filing the instant suit, she waived the confidentiality provisions of the expunction order, thereby making her records available to Defendants, but they have declined to conduct any discovery in that regard and thus cannot claim that they have been deprived of important information as a result. (Doc. 25 at 3-5).

Next, Plaintiff argues that she has established a Fourth Amendment claim for malicious

---

[1] Apparently, the evidence-tampering charge related to the Office Depot fax was ultimately dropped by the district attorney.

prosecution because Defendants did not have probable cause to initiate her criminal prosecution, they withheld exculpatory evidence from her, and they acted with malice in doing so.² (*Id.* at 5-7). Specifically, Plaintiff contends that Defendant Spiller's actions preclude a finding of probable cause because he schemed to terminate her and bring charges against her to impair her ability to get a future law enforcement job. (*Id.* at 7).

In support, Plaintiff cites to the affidavit of Rebecca Williams, a former DART human resources employee, who claims that she was present at two post-termination administrative hearings during which Defendant Spiller stated that (1) he released the assault suspects without charging them in exchange for them writing a statement against Plaintiff, and they had not committed a crime; (2) he wanted Plaintiff to get convicted and did not want her to be able to get another law enforcement job; and (3) he had an officer who would say whatever Spiller needed him to say regarding the assault incident. (*Id.* at 7-8; Doc. 30 at 1-2). Plaintiff contends that these actions show that there was no probable cause to arrest her because when Spiller ordered the assault case dropped, there was no crime and thus no investigation in which the condition of Plaintiff's face was an issue.

Plaintiff also argues that there was no probable cause to charge her with evidence tampering because Defendants presented no evidence that Plaintiff was aware she was under investigation at the time she struck herself, which is a prerequisite to an evidence-tampering charge under Texas law. (Doc. 25 at 9-10). Further, there is no evidence that Plaintiff took any

---

² In her complaint, Plaintiff stated that her malicious prosecution claim was based on state law, but in her summary judgment response, she now contends the claim relies on Fourth Amendment federal constitutional law and her claim will be analyzed below accordingly. (*Cf.* Doc. 1 at 5-6; Doc. 25 at 5).

action to herself that "would affect the outcome of the investigation" within the meaning of Texas law, as Defendant Ruiz testified that he did not know whether Plaintiff actually worsened her injuries. (*Id.* at 10-11; Doc. 28 at 33). As to the Office Depot fax, Plaintiff argues that there is no proof as to who wrote the letter. (Doc. 25 at 11).

Plaintiff also contests Defendants' claims that the intervening actions of the district attorney and magistrate insulate them from liability because Defendant Spiller intentionally set out to destroy Plaintiff's career and employed another officer to assist him. (*Id.* at 11-12). Further, she argues that Defendants are not entitled to qualified immunity because Defendant Spiller withheld evidence that he had a personal vendetta against Plaintiff, and that DART is liable because Defendant Spiller is an official policy-maker who set in motion the events that led to her termination, prosecution, and inability to work in law enforcement. (*Id.* at 12-15). Last, Plaintiff maintains that Defendants are not entitled to Texas governmental immunity. (*Id.* at 16-17).

Plaintiff submitted an affidavit, averring that (1) on the day of the assault, she was not aware that DART had decided to investigate her actions following the confrontation with a DART passenger; and (2) after the assault, she tried to alleviate the pain in her face by hitting and rubbing the area where she had been kicked. (Doc. 28 at 9). She also submitted an excerpt from the transcript of her criminal trial in which the state district attorney stated that Plaintiff was charged with evidence tampering because, knowing that the assault investigation was in progress, Plaintiff had injured her face with the intent to impair the veracity of the evidence involved in the investigation. (*Id.* at 14-15).

In addition, Plaintiff has filed a *Motion to Strike Defendants' Summary Judgment*

*Evidence*, objecting to various portions of Defendants' supporting appendix, including portions of (1) Defendant Spiller's, Defendant's Wilder's, and Defendant Oswalt's affidavits that Plaintiff maintains are not based on personal knowledge or contain hearsay or legal conclusions; and (2) DART record-keeper Lynda Jackson's affidavit, insofar as she states that certain records submitted in Defendants' summary judgment appendix were made at or near the time of the events, because the records were made several months thereafter and are thus inadmissible hearsay. (Doc. 26).

## II. APPLICABLE LAW AND ANALYSIS

*A. Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). Unsubstantiated beliefs are not competent summary judgment evidence. *de la O v. Housing Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005). "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 989 F.2d 1257, 1266 (5th Cir. 1991) (citation omitted and alternations in original).

6

B.    *Title 42 U.S.C. Section 1983 and Qualified Immunity*

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, Plaintiff must allege facts that show that (1) she has been deprived of a right secured by the Constitution and the laws of the United States, and (2) Defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation. *Id.* at 816. A court can begin its assessment with either prong. *Id.* at 818 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)). In this case, discussion of the second prong is not necessary because, as set forth below, Defendants did not violate any of Plaintiff's constitutional rights.

C.    *Malicious Prosecution and Fourth Amendment Unreasonable Seizure Law*

Under *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (*en banc*), there exists no freestanding cause of action under section 1983 for a claim of malicious prosecution. *See also Jennings v. Patton*, — F.3d —, 2011 WL 801817, *3 (5th Cir. March 9, 2011) (a freestanding malicious prosecution claim fails as a matter of law). Thus, a plaintiff cannot state a malicious

prosecution claim under section 1983 merely by arguing that charges were filed against him without probable cause; a plaintiff also must show that officials violated specific constitutional rights. *Id.* Nevertheless, the initiation of criminal charges without probable cause may set in force such events that themselves run afoul of explicit constitutional protection, such as the Fourth Amendment if the accused is seized and arrested. *Castellano*, 352 F.3d 953-54. "Regardless, [such claims] are not claims for malicious prosecution and labeling them as such only invites confusion." *Id.* at 954.

In this case, Plaintiff has stated that she was charged despite the absence of probable cause, which led to her unlawful seizure and arrest. (Doc. 25 at 5-7, 9-10). Accordingly, her claim is more properly classified as a Fourth Amendment claim, and further describing it as a malicious prosecution claim would only invite confusion. Therefore, the only issue left in this regard for the Court to determine is whether Plaintiff's Fourth Amendment claim can survive summary judgment.

To show that she was arrested in violation of the Fourth Amendment, Plaintiff must demonstrate that there was no probable cause for her arrest. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The facts must be known to the officer at the time of the arrest, and justifications based on facts later learned cannot support an earlier arrest. *Club Retro*, 568 F.3d at 204. The court must apply an objective

8

standard and find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense. *Id.*

Further, the chain of causation can be broken and the initiating party insulated from Fourth Amendment liability if facts supporting the arrest are placed before an independent intermediary such as a magistrate or grand jury. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). The chain of causation, however, may remain intact if it can be shown that the defendants' actions somehow tainted the deliberations of that intermediary. *Id.* "[T]he chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary [and] the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Id.* (quotation omitted). A plaintiff's mere allegations of "taint," without more, are insufficient to overcome summary judgment. *Id.*

> Under Texas law, a person commits the crime of evidence tampering if:
>
> knowing that an investigation or official proceeding is pending or in progress, he (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation . . . or (2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

TEX. PEN. CODE § 37.09(a).

In this case, Defendant police officers clearly had probable cause to believe that Plaintiff had violated section 37.09(a)(1) when she was witnessed (and has subsequently admitted to) striking herself in the face at the site of her alleged injuries, during the investigation into the

9

assault upon her person. Despite Plaintiff's argument to the contrary, the law does not require that the investigation have been into *Plaintiff's* actions at that juncture; it is enough that the officers discovered her crime during the ongoing investigation into her allegations of assault. *See Dooley v. State*, 133 S.W.3d 374, 376 (Tex. App. - Austin 2004, pet. refused) (upholding a conviction under section 37.09 where police officers went to a residence to investigate defendant's sister and witnessed defendant using crack cocaine at which point defendant attempted to destroy the crack by crumbling it up and throwing it in a bathtub).

On a related point, the Court finds similarly meritless Plaintiff's argument that when Defendant Spiller ordered the assault case dropped, there was no ongoing investigation in which the condition of Plaintiff's face was an issue and thus no probable cause. This argument ignores the fact that Plaintiff tampered with evidence *while the assault investigation was underway*, not after the case had been dropped. Finally, Defendants also had probable cause, based on Defendant Ruiz's investigation, to believe that Plaintiff had violated section 37.09(a)(2) by submitting a false eyewitness statement via facsimile transmission from an Office Depot.

Plaintiff's contention that Defendants withheld "exculpatory evidence" of Defendant Spiller's motives and actions is similarly baseless. Seemingly, Plaintiff is arguing that Defendant Spiller's supposed vendetta against her tainted the subsequent grand jury and magistrate proceedings, thereby not breaking the chain of causation on her Fourth Amendment claims. *Cuadra*, 626 F.3d at 813. However, Plaintiff has presented no evidence, other than her speculative allegations of taint, to suggest that Defendant Spiller's allegedly malicious motive led Defendants to withhold any relevant information from the grand jury or magistrate. Thus, her allegations are insufficient to overcome summary judgment. *Id.*; *de la O*, 417 F.3d at 502.

D. *Due Process Claim*

Plaintiff appears to allege that Defendants withheld exulpatory information, namely Defendant Spiller's vendetta against her, in violation of her due process rights. The duty to disclose material exculpatory information and impeachment evidence is indeed rooted in due process. *Matthew v. Johnson*, 201 F. 3d 353, 360 (5th Cir. 2000). Nevertheless, Plaintiff has presented no evidence, aside from her speculation, as to Spiller's motivations, and mere speculation is insufficient to defeat summary judgment. *Int'l Shortstop, Inc.*, 989 F.2d at 1266. The undisputed evidence is that Defendant Spiller did not submit the criminal charges to the District Attorney's Office nor testify at Plaintiff's trial. (Doc. 18-6 at 2). Accordingly, Defendants also are entitled to summary judgment on Plaintiff's due process claim. In light of the foregoing, the Court need not address Defendants' remaining arguments.

## III. CONCLUSION

For the reasons set forth above, Defendant's *Motion for Summary Judgment* (Doc. 17) is **GRANTED**. In determining that Defendants are entitled to summary judgment, the Court did not rely on any of the evidence that Plaintiff seeks to strike in her *Motion to Strike Defendants' Summary Judgment Evidence* (Doc. 26); thus, that motion is **DENIED AS MOOT**.

**SO ORDERED** on March 16, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE